**BROWN & KERR INCORPORATED,**
**a corporation, Plaintiff,**

v.

**ST. PAUL FIRE AND MARINE**
**INSURANCE COMPANY, a**
**corporation, Defendant.**

**ST. PAUL FIRE AND MARINE INSUR-**
**ANCE COMPANY, a corporation,**
**Third–Party Plaintiff,**

v.

**BUCON, INC., d/b/a Butler Construction,**
**Third–Party Defendant.**

**No. 95 C 1119.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 12, 1996.

Daniel Steven Mathless, Law Office of Daniel S. Mathless, Chicago, IL, for Brown & Kerr Incorporated.

James S. Stickles, Jr., Mary R. Kenney, Johnson & Bell, Ltd., Chicago, IL, for St. Paul Fire & Marine Ins. Co.

Peter Petrakis, Laura A. O'Connell, Katten, Muchin & Zavis, Chicago, IL, for Bucon Inc. dba Butler Construction.

## MEMORANDUM OPINION AND ORDER

ANDERSEN, District Judge.

Plaintiff Brown & Kerr, Inc. ("BKI") moves for partial summary judgment on Count I of its Amended Complaint against defendant St. Paul Fire and Marine Insurance Company ("St. Paul"). For the following reasons, the motion for partial summary judgment is granted.

### BACKGROUND

The following facts, taken from plaintiff's Amended Complaint and the parties' Local Rule 12M and 12N statements, are undisputed. On February 18, 1993, Bucon, Inc. ("Bucon") entered into a multi-million dollar design/build contract with Vernon Hills III Limited Partnership ("Vernon Hills") to perform various construction services for a project known as "The Marketplace" in Vernon Hills, Illinois. Pursuant to the terms of the contract with Vernon Hills, Bucon was to act as general contractor for the Marketplace project.

At the inception of the contract, the sole owner of the premises was Vernon Hills. In 1994, K Mart Corporation ("K Mart") and Northwestern Mutual Life Insurance Company ("Northwestern Mutual") also acquired ownership interests in the premises.

On April 6, 1993, defendant St. Paul, as surety, issued a "Labor and Material Payment Bond" (the "Bond") for the Marketplace project in the amount of $15,735,307 with Bucon as the principal. The owners or obligees on the Bond are Vernon Hills, Northwestern Mutual, and K Mart. The Bond provides in part:

The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant, as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for

the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of any such suit.

(Pl.'s App.Supp.Summ.J.Ex. A at ¶ 2). Claimants are defined to include subcontractors. (*Id.* at ¶ 1). The Bond further provides that no claimant may bring suit unless that claimant has "given written notice to any two of the following: the Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor" under the contract. (*Id.* at ¶ 3(a)).

On May 17, 1993, Bucon, as general contractor, entered into two subcontracts with plaintiff BKI totalling $598,603. Pursuant to the subcontracts, BKI was to supply labor and materials for a complete roofing system of the Marketplace project. One subcontract concerned the Super K Mart portion of the project, and the other subcontract concerned the Builders Square Marketplace portion. Article 9.1 of the subcontracts provides in part:

> Final Payment constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Subcontract Documents, the Customer or Customer's representative has issued its approval for payment covering the Subcontractor's completed work and the Contractor has received final payment from the Customer under the Prime Contract.

(Def.'s Mem.Opp'n Summ.J. at 3). The subcontracts further provide that, as a condition to the Contractor's issuance of final payment, the subcontractor shall provide all applicable warranties and guarantees. (*Id.* at 4).

On October 25, 1994, BKI completed performance under the subcontracts and even performed extras, at the request of Bucon, in the amount of $51,848. BKI subsequently received payments of 544,035.70, and remains owed a total amount of $106,415.30. According to Bucon, there is an unpaid balance on the subcontracts in the amount of $86,879.30.

St. Paul does not dispute this amount. Further, as of the filing of the instant motion, Bucon has not received any payment from the owners for work performed at the Marketplace project.

On or about December 16, 1994, BKI forwarded to Bucon the manufacturer's warranty for the roofing system issued by Firestone Building Products Company. Paragraph 3 of the warranty provides that Firestone has no obligation under the warranty until both Firestone and BKI have been paid in full. (Pl.'s Reply Br.Supp.Summ.J.Ex. B at ¶ 3). BKI also forwarded to Bucon its own warranty for the roofing system.

On January 9, 1995, BKI served notice of its demand for payment of the remaining balance on the subcontracts, via certified mail, on the three owners and Bucon as required by the Bond. BKI served an additional notice to St. Paul on January 20, 1995.

BKI subsequently received no payment after serving its demand notices on the owners, Bucon, and St. Paul. On February 22, 1995, BKI filed a one-count complaint against St. Paul seeking payment of $106,415.30 under the Bond for its completed work under the subcontracts and "extras." Jurisdiction was based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

As of April 1995, BKI had still not received the balance due under the subcontracts. Consequently, BKI suspended both the Firestone and BKI warranties.

On June 15, 1995, BKI filed an Amended Complaint adding a second count against St. Paul for vexatious delay in paying BKI's claim under the Bond in violation of section 155 of the Illinois Insurance Code, 215 ILCS 5/155. This Court dismissed the section 155 vexatious delay claim in Count II for lack of standing on August 12, 1996. *See Brown & Kerr, Inc. v. St. Paul Fire & Marine Ins. Co.,* No. 95 C 1119, 1996 WL 464212, at *2 (N.D.Ill. Aug. 12, 1996).

BKI now moves for partial summary judgment on Count I of the Amended Complaint pursuant to Fed.R.Civ.P. 56. Specifically, BKI does not seek to recover the entire $106,415.30 which is allegedly owed for completed work under the subcontracts and for

"extras" performed at the request of Bucon. Rather, BKI seeks only the final balance of $86,879.30 due under the subcontracts which Bucon has admitted it owes BKI and which St. Paul does not dispute. In sum, BKI requests that we enter partial summary judgment for this undisputed balance of $86,879.30 due under the subcontracts after which "[t]he parties can then thrash out the rest of BKI's claims." Presumably, the only remaining claim would be the $51,848 in "extras" performed by BKI at Bucon's request.

St. Paul argues that BKI is not entitled to partial summary judgment on the following grounds: (1) any defenses under the subcontracts available to Bucon are also available to St. Paul as a surety; (2) because Bucon has not been paid by the owners, St. Paul has no obligation to pay BKI under its Bond pursuant to the "pay when paid" clause in the subcontracts; and (3) a material issue of fact exists as to whether BKI provided Bucon with all warranties and guarantees as required by the subcontracts.

### DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Salima v. Scherwood South, Inc.*, 38 F.3d 929, 932 (7th Cir.1994). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party bears the burden of demonstrating that there is an absence of evidence to support the position of the nonmoving party. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 442–43 (7th Cir.1994). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Associated Milk Producers, Inc. v. Meadow Gold Dairies, Inc.*, 27 F.3d 268, 270 (7th Cir.1994), presenting only a scintilla of

evidence will not suffice to oppose a motion for summary judgment. *Walker v. Shansky*, 28 F.3d 666, 671 (7th Cir.1994).

In making its determination, the Court's sole function is to determine "whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918 (7th Cir.1994). Credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions, not those of a judge when deciding a motion for summary judgment. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14.

In the present case, the material facts are largely uncontested. This suit involves a claim against a surety, St. Paul, by a subcontractor, BKI, for money due on work performed when the general contractor, Bucon, has not been paid by the owner. Bucon, as principal, entered into a labor and material payment Bond with St. Paul as surety. The payment Bond authorizes any subcontractor, who has not been paid within ninety days after completing its work, to sue under the Bond. BKI has completed all of its work as required under the subcontracts. There is no dispute that BKI satisfactorily performed this work. Moreover, neither Bucon nor St. Paul dispute that BKI is still owed $86,879.30 under the subcontracts.

The only issue before the Court is whether St. Paul, as surety, can invoke two different provisions in the subcontract as defenses to payment under the Bond. The first provision contains what is commonly known as a "pay when paid" clause. The second provision concerns manufacturer's warranties. We find that these provisions do not preclude payment under the Bond and, therefore, enter partial summary judgment in favor of BKI.

### I. *"Pay When Paid" Clause*

■ St. Paul's defenses to payment rely exclusively on the general rule that the liability of a surety under a payment bond is coextensive with that of its principal. *See Premier Elec. Const. Co. v. American Nat. Bank of Chicago*, 276 Ill.App.3d 816, 829, 213 Ill.Dec. 128, 139, 658 N.E.2d 877, 888 (1995), *appeal denied*, 164 Ill.2d 582, 214 Ill.Dec. 331, 660 N.E.2d 1280 (1995) (*citing Lake*

*View Trust & Sav. Bank v. Filmore Const. Co.,* 74 Ill.App.3d 755, 30 Ill.Dec. 678, 393 N.E.2d 714 (1979)). This coextensive liability has been interpreted to mean that the rights and defenses of the principal belong to the surety by virtue of the relationship created by the surety contract. *Village of Rosemont v. Lentin Lumber Co.,* 144 Ill.App.3d 651, 668, 98 Ill.Dec. 470, 481, 494 N.E.2d 592, 603 (1986).

Here, Bucon's subcontract with BKI contains a "pay when paid" clause. Article 9.1 of the subcontract provides in part:

> Final Payment constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when ... the Contractor has received final payment from the Customer under the Prime Contract.

(Def.'s Mem.Opp'n Summ.J. at 3). St. Paul now argues that, because Bucon has not yet been paid, and because the surety borrows the defenses of the principal, BKI has no right to payment under the Bond. We disagree.

BKI is suing under the Bond and not the subcontract. The two are separate agreements. St. Paul has neither cited, nor have we discovered, any authority for the proposition that the inability to proceed against the general contractor because of a "pay when paid" clause in the subcontract necessarily prevents recovery against the surety under the payment Bond. Indeed, such an argument runs counter to the underlying purpose of the payment Bond, i.e., the assurance of payment to subcontractors. *See Premier Elec.,* 276 Ill.App.3d at 829, 213 Ill.Dec. at 139, 658 N.E.2d at 888.

Moreover, the specific payment Bond issued by St. Paul does not condition payment to BKI on the owner making final payment to Bucon. Nor does the Bond incorporate the payment terms of the subcontract. The terms of the bond are clear and unambiguous. (*See* Pl.'s App.Supp.Summ.J.Ex. A). If Bucon, as principal, promptly pays BKI, then any obligation by St. Paul as surety is void. However, if BKI has not received final payment from Bucon within ninety days after finishing work, BKI may sue on the bond, prosecute the suit to final judgment, and

have execution thereon. BKI has satisfactorily performed under the subcontract and has yet to receive final payment and, therefore, St. Paul as surety is liable.

St. Paul argues that the "90 day" provision in the payment Bond merely allows the subcontractor to bring suit under the Bond but does not guarantee payment unless the claimant has complied with all provisions of the subcontract including the "pay when paid" clause. Significantly, however, BKI's obligations under the Bond are completely unrelated to the "pay when paid" clause. Moreover, payment by the owners to Bucon is not within BKI's control. Pursuant to St. Paul's theory, a subcontractor could satisfactorily perform all of its own obligations under the subcontract and yet never recover under the Bond if the general contractor does not receive payment from the owner. We do not believe the Bond contemplates that payment of subcontractors should await the determination of an extended legal dispute between the owner and general contractor concerning his work which is completely unrelated to BKI, particularly since the underlying purpose of the bond is to assure the payment of subcontractors and when, as here, BKI has completed performance under the subcontracts. *See Premier Elec.,* 276 Ill.App.3d at 829, 213 Ill.Dec. at 139, 658 N.E.2d at 888. St. Paul has not cited any authority to the contrary.

St. Paul does cite *A.A. Conte, Inc. v. Campbell–Lowrie–Lautermilch Corp.,* 132 Ill. App.3d 325, 87 Ill.Dec. 429, 432, 477 N.E.2d 30, 33 (1985) for the proposition that the "pay when paid" clause contained in the subcontract between Bucon and BKI is a valid condition precedent to Bucon's performance under the contract. We do not find *A.A. Conte* dispositive in the instant case. First, it is distinguishable. In *A.A. Conte,* unlike the present case, the subcontractor proceeded directly against the general contractor to recover payment for work performed under the subcontract. The court found that a similar "pay when paid" clause was a valid condition precedent to payment under the subcontract. *Id.* at 329–30, 87 Ill.Dec. at 432–33, 477 N.E.2d at 33–34.

Second, we do not construe the "pay when paid" clause at issue here as a valid condition precedent to payment. In *A.A. Conte*, Justice Jiganti dissented from the court's decision and concluded that the "pay when paid" clause at issue did not create a condition precedent to payment. *Id.* at 330, 87 Ill.Dec. at 433, 477 N.E.2d at 34. Rather, the clause created a timing provision requiring the contractor to pay the subcontractor within a reasonable time. *Id.* In reaching this conclusion, Justice Jiganti cited section 227 of the Restatement (Second) of Contracts which provides that an event should not be construed as a condition precedent unless it is within the subcontractor's control or the circumstances indicate that he assumed the risk. *Id.*

Justice Jiganti's dissent in *A.A. Conte* was later codified in the Illinois Mechanic's Lien Act which provides in part:

Any provision in a contract, agreement, or understanding, when payment from a contractor to a subcontractor or supplier is conditioned upon receipt of the payment from any other party including a private or public owner, shall not be a defense by the party responsible for the payment to a claim brought under Section 21, 22, 23, or 28 of the Act against the party.

770 ILCS 60/21; *Midland Steel Erectors, Inc. v. La Salle National Bank, et al.*, No. 88 CH 6671, slip. op. at 18–20 (Ill.Cir.Ct. June 16, 1995). Although this provision applies only to cases brought under the Illinois Mechanic's Lien Act, it illustrates the Illinois Legislature's concern with construing a "pay when paid" clause as a condition precedent to a subcontractor's payment. Indeed, even the majority in *A.A. Conte* noted "that conditions precedent are not generally favored and courts will not construe stipulations to be a condition precedent when such a construction would result in forfeiture." 132 Ill.App.3d at 329, 87 Ill.Dec. at 432, 477 N.E.2d at 33.

In the instant case, we reach a similar conclusion and do not construe the "pay when paid" clause as a valid condition precedent to payment under the subcontract. Such an interpretation would result in a significant forfeiture of BKI's rights under the subcontract, particularly since BKI has complied with all provisions of the subcontract within its control. Further, there is no suggestion that BKI assumed all risk of forfeiture for an independent dispute between the owners and Bucon.

Accordingly, we find that the "pay when paid" clause in the subcontract does not preclude payment under the Bond when the subcontractor has satisfactorily performed its obligations under the subcontract. Even if we were to apply the clause to the payment Bond here, we do not construe it as a valid condition precedent to payment because such a construction would work a significant forfeiture of BKI's rights under the subcontract and, more importantly, the payment Bond. *See A.A. Conte*, 132 Ill.App.3d at 329, 87 Ill.Dec. at 432, 477 N.E.2d at 33 ("[C]onditions precedent are not generally favored and courts will not construe stipulations to be a condition precedent when such a construction would result in forfeiture.").

## II. *Warranty Clause*

■ Lastly, St. Paul argues that a material issue of fact exists as to whether BKI complied with the provision in the subcontract which requires BKI to provide Bucon all applicable guarantees and/or warranties related to its work. (*See* Def.'s Mem.Opp'n Summ.J. at 4). This breach of the subcontract, St. Paul argues, precludes recovery under the Bond. Again, we disagree.

■ First, St. Paul may be prohibited from changing its litigating position under the Illinois "mend the hold" doctrine which provides that a party to a contract suit may not shift his litigating position in the absence of newly-discovered information or other changed circumstances. *See Harbor Ins. v. Continental Bank Corp.*, 922 F.2d 357, 362–64 (7th Cir.1990); *see also Horwitz–Matthews, Inc. v. City of Chicago*, 78 F.3d 1248, 1251 (7th Cir.1996) ("Under the doctrine of 'mend the hold,' in force in Illinois, a party to a contract cannot, at least after the pleadings are complete, repudiate a position taken in the course of litigation over the contract."). Here, Bucon and St. Paul initially denied any liability based solely on the "pay when paid" clause of the subcontract. In fact, counsel for both parties made representations to this

Court that denial of payment to BKI was premised solely on the "pay when paid" clause in the subcontract. St. Paul now raises the warranty provision in the subcontract as a defense to payment. Under certain circumstances, a party who cites specific grounds for refusing to perform a contract waives all other grounds for refusing to perform. *See, e.g., Harbor Ins.*, 922 F.2d at 362.

Whether the Illinois "mend the hold" doctrine does in fact preclude St. Paul from raising a new defense we need not decide because, in any event, the undisputed facts do not support St. Paul's argument. According to the affidavit of BKI Project Manager Edward J. Woods, BKI initially tendered warranties from both Firestone, the roofing system manufacturer, and BKI. (Woods Aff. ¶ 3). BKI suspended the warranties five months later only after both Bucon and St. Paul refused to make final payment for completed work. (Woods Aff. ¶ 5). The affidavit submitted by St. Paul does not rebut this position. It merely states that BKI and Firestone have repudiated their warranties. (Hale Aff. ¶ 7). This is consistent with BKI's position, which St. Paul does not dispute, that BKI initially tendered warranties and suspended them only after no payment was received from St. Paul or Bucon. St. Paul has not submitted any other affidavits to the contrary. Rather, St. Paul now seeks to invoke Bucon's own failure to perform under the subcontracts as a defense to payment under the Bond. Contrary to St. Paul's assertions, the record establishes that BKI initially tendered its own and the manufacturer's warranties as required by the subcontracts and only suspended them after Bucon refused to make final payment. Accordingly, we find no disputed material facts which might preclude partial summary judgment.

## CONCLUSION

For all of the foregoing reasons, BKI's motion for partial summary judgment on Count I of the Amended Complaint is granted. Judgment is hereby entered in favor of BKI in the amount of $86,879.30. Because the Court finds there is no just reason for delay, the Clerk is directed to enter a final judgment pursuant to Fed.R.Civ.P. 54(b) in favor of BKI in the amount of $86,879.30.

It is so ordered.