WILKINS, Circuit Judge,
concurring in part and dissenting in part:
The majority opinion affirms the grant of summary judgment against Highlands Insurance Co. (Highlands), affirms the judgments in favor of Moore Brothers Co., Inc. (Moore) and The Lane Construction Corporation (collectively, “the Subcontractors”) with respect to the “change in scope” claims, and reverses the ruling of *728 the district court that the pay-when-paid clauses do not apply to the early completion bonus, remanding the early completion bonus claims to the district court for further proceedings. The majority opinion also affirms the denial of the Subcontractors’ request for prejudgment interest on the early completion bonus claims and Moore’s request for prejudgment interest on its change in scope claim. I agree that the district court erred in awarding judgment to the Subcontractors on the early completion bonus claims and that the district court did not err in denying the requests for prejudgment interest. However, because Virginia law and the surety bond itself allowed Highlands to assert Brown & Root, Inc.’s (Brown & Root) pay-when-paid defense, I would conclude that the district court erred in holding that Highlands could not assert that defense. I would also conclude that the district court erred in holding that the prevention doctrine excused the nonfulfillment of the pay-when-paid condition with respect to the change in scope claims.
I.
I first address Highlands’ argument that the district court erred in granting summary judgment against it. Although some jurisdictions prohibit a general contractor from shifting the risk of an owner’s insolvency to its subcontractors, see, e.g., N.C. Gen.Stat. § 22C-2 (1999), Virginia law is clear that when a subcontract unambiguously states that payment by the owner to the contractor is a condition precedent to payment by the contractor to the subcontractor, such a term will be enforced. See Galloway Corp. v. S.B. Ballard Constr. Co., 250 Va. 493, 464 S.E.2d 349, 354 (1995). Virginia law is also clear that because a surety and its principal are in privity, a surety “stands in the principal’s shoes and may assert ... those defenses available to the principal.” Board of Supervisors v. Southern Cross Coal Corp., 238 Va. 91, 380 S.E.2d 636, 639 (1989).
Because Highlands stands in the shoes of Brown & Root, to the extent that Brown & Root can assert the pay-when-paid defense, Highlands can do so as well. Without mentioning this dispositive principle of Virginia law, the majority holds that Highlands cannot assert Brown & Root’s defense because the pay-when-paid clause was not incorporated into the bond. See ante, at 722-23. However, even assuming that Virginia law provided that a. surety can assert a defense of its principal only when the contract language providing the basis for the defense is incorporated into its bond, Highlands can assert the pay-when-paid defense because the pay-when-paid clause here was incorporated into the bond. The bond provided in relevant part that Brown & Root, as principal, and Highlands, as surety:
jointly and severally agree with the Obli-gees [Toll Road Investors Partnership II, L.P. (“TRIP”), the lenders, and the Virginia Department of Transportation (“VDOT”) ] that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant’s work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon.
J.A. 1818 (emphasis added). The phrase “justly due” in this context can only mean “justly due” from the contractor under the subcontracts, as the subcontracts provide the only basis for the Subcontractors being “due” any payment at all. Cf. Taylor Constr. Inc. v. ABT Serv. Corp., 163 F.3d 1119, 1122 (9th Cir.1998) (stating, in applying the Miller Act, see 40 U.S.C.A. §§ 270a-270d (West 1986 & Supp.1999), that “[l]ong-standing precedent confirms that ‘sums justly due’ means the sums due the party under the bonded contract”); United States ex rel. Maddux Supply Co. v. St. Paul Fire & Marine Ins. Co., 86 F.3d 332, 336 (4th Cir.1996) (per curiam) (relying on terms of the contract between the subcontractor and materials supplier in determining that interest and attorneys’ fees were included in the “sums justly *729 due” the supplier under the Miller Act); United States ex rel. Woodington Elec. Co. v. United Pac. Ins. Co., 545 F.2d 1381, 1383 (4th Cir.1976) (stating that “sums justly due” a subcontractor under the Miller Act “must be determined by reference to the subcontract”). Here, because the Subcontractors were entitled to be paid under the subcontracts only if Brown & Root received payment from TRIP and that condition did not occur, the Subcontractors were not entitled to payment under the bond.
In rejecting the notion that sums “justly due” refers to sums justly due under the terms of the subcontracts, the majority fails to explain to what it believes the phrase “sums justly due” refers.[1] Rather, the majority simply concludes that allowing Highlands to assert the pay-when-paid defense against the Subcontractors “is nonsensical, for it defeats the very purpose of a payment bond,” which the majority asserts without analysis to be “to insure that claimants who perform work are paid for their work in the event that the principal does not pay.”[2] Ante, at 723. Of course, to baldly characterize the “purpose” of the bond in such a broad fashion is merely to assume that the parties intended that Highlands’ liability would not be coextensive with Brown & Root’s — an assumption that both Virginia surety law and the bond suggest is completely unwarranted.[3]
Moreover, in proclaiming that allowing Highlands to assert Brown & Root’s pay-when-paid defense would defeat the purpose of the bond, the majority overlooks the fact that Brown & Root agreed to indemnify Highlands for amounts that Highlands would have to pay under the bond. The simple fact here is that someone — either Brown & Root, the Subcontractors, or Highlands — had to bear the risk that TRIP would not pay Brown & Root. Virginia law specifically allows subcontractors to bear that risk, and the Subcontractors here agreed to do so. The majority essentially rewrites the agreements that these sophisticated parties negotiated at arms length and shifts the risk of nonpayment by TRIP back to Brown & Root. This result is completely at odds with the freedom of contract principles embraced in Galloway and is most assuredly not the result that the Supreme Court of Virginia would reach.[4] Accord *730 ingly, I would reverse the grant of summary judgment against Highlands. See Doe v. Doe, 973 F.2d 237, 240 (4th Cir. 1992) (explaining that the function of this court in a diversity case is to resolve the state law issues as we predict the highest court in the state would).
II.
I next address Brown & Root’s contention that the district court erred in ruling that Brown & Root could not assert the nonfulfillment of the pay-when-paid condition as a defense to the change in scope claims because Brown & Root prevented or hindered the fulfillment of the condition.
Under the prevention doctrine, when a promisor hinders or prevents fulfillment of a condition and that hindrance or prevention “contributes materially” to the nonoccurrence of the condition, the condition is excused. Restatement (Second) of Contracts § 245 (1981). Because the prevention doctrine “is purely one of waiver,” only “active conduct of the conditional promisor, preventing or hindering the fulfillment of the condition” excuses nonful-fillment of the condition. Parrish v. Wightman, 184 Va. 86, 34 S.E.2d 229, 232 (1945) (internal quotation marks omitted). Moreover, “the action of the party whose conduct is alleged to have prevented performance must be wrongful, and, accordingly, in excess of his legal rights.” Whitt v. Godwin, 205 Va. 797, 139 S.E.2d 841, 844 (1965) (internal quotation marks omitted).
The district court found that four acts by Brown & Root excused the nonfulfillment of the pay-when-paid condition, none of which, in my view, supports excusing nonfulfillment. The primary act on which the district court relied — and the one on which the majority relies in affirming— was that Brown & Root “concealed from the lenders its expectation that changes in scope would occur.” Lane Constr. Corp. v. Brown & Root, Inc., 29 F.Supp.2d 707, 724 (E.D.Va.1998). The district court reasoned that absent the concealment, the lenders would have provided adequate contingency funding and “money would have been available to pay Brown & Root for the change in scope claims.” Id. These findings were clearly erroneous because the district court had no reasonable basis for concluding that Brown & Root’s concealment of its concern that scope changes would be necessary contributed materially to TRIP’S failure to pay Brown & Root for the change in scope work.
In reviewing this issue, it is important to view the information concealed in light of the information that the lenders did have. The lenders must have been aware that there was a possibility that changes- — particularly changes in the asphalt thickness — would occur: As the district court found, the consulting engineering firm retained by the lenders recommended the additional pavement thickness. See id. at 713. The lenders also must have been aware that a change in asphalt thickness and similar changes might entitle Brown & Root to additional payment under the contract: Although the parties had deleted language in the contract stating that a change in asphalt thickness would constitute a substantial change in project scope, the parties had not included language in the contract stating that such a change would not constitute a substantial change in project scope. Accordingly, the lenders were well aware that there was a possibility that TRIP would have to pay for increased asphalt thickness.
*731 With this background, it is important to recognize that the only information that Brown & Root “concealed” from the lenders relating to whether extra work would be required was Brown & Root’s concern that the lenders’ own consultant’s view that the asphalt needed to be thicker might prevail with the VDOT over the contrary view advanced by Brown & Root’s engineering firm. The question then becomes what effect, if any, the lenders’ knowledge of Brown & Root’s concern would have had on the lenders’ evaluation of the views of the lenders’ own engineer. Importantly, there is no testimony from the lenders stating that had they known of Brown & Root’s concern, they would have required further funding. Without such evidence, the district court could only speculate concerning whether the concealment had any effect at all on the lenders’ evaluation of the probability that TRIP would have to pay for thicker asphalt.
It is possible that disclosure of Brown & Root’s concern to the lenders would have had some effect on the lenders’ assessment of the probability that TRIP ultimately would have to pay for thicker asphalt. Nevertheless, there simply was no reasonable, nonspeculative basis from which a factfinder could conclude that this disclosure, had it been made, would have caused the lenders to decide that funding for the project was inadequate. And, even if such a basis existed, a factfinder still would have been left to speculate as to whether knowledge of Brown & Root’s concern would have prompted the lenders to provide more funding or would have prompted the lenders to decide not to fund the project at all.[5] In short, the Subcontractors failed miserably in their attempt to prove that Brown & Root contributed materially to TRIP’S failure to pay for the change in scope claims. Accordingly, I believe the district court erred in excusing the nonful-fillment of the pay-when-paid condition by virtue of the prevention doctrine, and the majority errs in holding otherwise.
III.
In sum, I would reverse the grant of summary judgment against Highlands; reverse the judgments against Brown & *732 Root on the Subcontractors’ change in scope claims; remand the early completion bonus claims; and affirm the denial of the requests for prejudgment interest.

. Assuming arguendo that "justly due” refers to some general notion of fairness, rather than to the subcontracts, I cannot understand how subcontractors who agreed that they would be entitled to payment only if the owner pays the contractor can be said to be "justly due” payment when the owner does not pay the contractor. Here, Brown & Root specifically contracted with Highlands to indemnify Highlands for any losses suffered by Highlands as a result of the bond. Therefore, the effect of preventing Highlands from asserting Brown & Root’s defense is simply to expand Brown & Root’s liability. Given the parties’ agreement, it would be unfair to force Brown & Root to pay the Subcontractors when it has never been paid by TRIP.

. Of course, the majority's argument would work equally well against the assertion by the surety of any of its principal’s defenses.

. A more accurate characterization of the purpose of the bond, considering Virginia surety law and the terms to which the parties agreed, is that the bond insured against Brown & Root’s wrongful default.

.Even if existing Virginia law did not make the correct result in this case perfectly clear, the cases from other jurisdictions relied upon by the majority would provide little support for its result. In Shearman & Associates, Inc. v. Continental Casualty Co., 901 F.Supp. 199 (D.V.I.1995), and OBS Co. v. Pace Construction Corp., 558 So.2d 404 (Fla.1990), the lien statutes for the two relevant jurisdictions required the posting of statutory payment bonds by a private owner wishing to exempt its property from subcontractor liens. See Shearman, 901 F.Supp. at 201-02; OBS, 558 So.2d at 408. Those courts held that local lien law would be thwarted if the protection provided by the bonds was not equal to that which would have been provided under the liens. See Shearman, 901 F.Supp. at 202-03; OBS, 558 So.2d at 408. Here, by contrast, the Subcontractors waived their rights to assert mechanics liens well before Highlands issued its bond, and the bond was not a statutory substitute for those rights.
The result in Brown & Kerr, Inc. v. St. Paul Fire & Marine Insurance Co., 940 F.Supp. 1245 (N.D.Ill.1996), rested in part on the con- *730 elusion of the court that a pay-when-paid clause is not a valid condition precedent to payment from the contractor under the subcontract. See Brown, 940 F.Supp. at 1250. Beyond that, the Brown court employs the same circular reasoning that the majority employs in the present case. In determining whether a surety is entitled to assert all of the defenses of its principal, the Brown court simply assumes that the “purpose'' of a bond is to ensure that subcontractors receive payment, and therefore concludes that allowing a surety to assert its principal’s pay-when-paid defense would contravene that purpose. See id. at 1249. That analysis is flawed for the reasons already discussed.