2016 IL App (1st) 151697

FIFTH DIVISION
September 30, 2016

No. 1-15-1697

|  |  |  |
|---|---|---|
| | ) | |
| BEAL BANK NEVADA, | ) | |
| | ) | Appeal from the |
| Plaintiff, | ) | Circuit Court of |
| | ) | Cook County |
| v. | ) | |
| | ) | |
| NORTHSHORE CENTER THC, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | No. 08 CH 39446 |
| | ) | |
| LAKE COUNTY GRADING COMPANY, LLC, | ) | |
| | ) | |
| Counterplaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | Honorable |
| | ) | Anthony C. Kyriakopoulos, |
| FCL INVESTORS, INC., formerly known as | ) | Judge Presiding. |
| FCL BUILDERS, INC., | ) | |
| | ) | |
| Counterdefendant-Appellee. | ) | |

JUSTICE REYES delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal addresses the issue of whether a contractor is liable for amounts due to a

subcontractor if the property owner fails to make payment to the contractor for the

subcontractor's work.  The circuit court of Cook County granted summary judgment in favor of

contractor FCL Investors, Inc., formerly known as FCL Builders, Inc. (Contractor), and against

subcontractor Lake County Grading Company, LLC (Subcontractor) on the Subcontractor's breach of contract claim. Applying *A.A. Conte, Inc. v. Campbell-Lowrie-Lautermilch Corp.*, 132 Ill. App. 3d 325 (1985) (*Conte*), the circuit court found that the provisions of the parties' subcontract "clearly make the receipt of payment from the [property owner] to [the Contractor], the condition precedent to [the Subcontractor's] payment." The circuit court concluded that the condition precedent has not been satisfied because the Contractor has not received payment from the property owner. As discussed below, we reverse the judgment of the circuit court.

¶ 2                                 BACKGROUND

¶ 3      As the circuit court proceedings were lengthy and complex, we provide only the facts necessary for the disposition of this appeal. In 2006, Northshore Center THC, LLC (Owner) borrowed funds from BankFirst, secured by notes and a mortgage, to develop real estate in Northbrook, Illinois. The Owner and the Contractor entered into a contract (contract), for the Contractor to perform certain construction work at the Northbrook site. The Contractor and Subcontractor entered into a subcontract (subcontract), for the Subcontractor to provide excavation, sewer line installation and other construction services.

¶ 4      After performing a portion of its work under the subcontract, the Subcontractor issued an invoice to the Contractor for $130,343.40; the said amount was tendered by the Owner. The Subcontractor subsequently issued additional invoices and payment requests to the Contractor for additional amounts totaling $775,872.60 for work performed under the subcontract. Although the Contractor submitted the invoices for payment to the Owner, the requests were refused and the Owner failed to pay. The Subcontractor recorded a subcontractor's claim for lien against the Contractor and the Owner on February 4, 2008, in the amount of $775,872.60. The Contractor recorded a contractor's claim for lien on November 26, 2008, claiming an outstanding

balance of $943,494.53 – which included the amount due to the Subcontractor.

¶ 5    BankFirst filed a foreclosure complaint against the Owner in the circuit court of Cook County in October 2008.  The complaint also named various parties with interests in the mortgaged real estate as defendants, including the Contractor and the Subcontractor.  The Subcontractor filed an answer and a counter-complaint, which included a breach of contract claim against the Contractor.  The affirmative defense asserted by the Contractor was basically that the subcontract provides that payment by the Owner to the Subcontractor is a condition precedent to any obligation by the Contractor to pay the Subcontractor.  In response, the Subcontractor argued that the Contractor's affirmative defense is prohibited by section 21(e) of the Mechanics Lien Act (770 ILCS 60/21(e) (West 2008)), discussed below.

¶ 6    Beal Bank Nevada (bank) – substituted as plaintiff for BankFirst – filed a second amended complaint in November 2009.  In March 2011, the Subcontractor and the bank entered into a settlement agreement wherein the Subcontractor agreed to release its mechanics lien in exchange for $475,000.  As a result of the settlement, the principal balance sought by the Subcontractor was reduced to $300,872.60.  The Contractor subsequently secured a judgment against the Owner in the amount of $943,494.53.  By that time, however, the Owner had ceased its operations and had been involuntarily dissolved.  Although the Contractor's counsel later transmitted an "assignment" of its judgment against the Owner to the Subcontractor's counsel, a stipulation in the record indicates that "[the Subcontractor] did not request and did not agree to take assignment of [the Contractor's] judgment against the Owner."

¶ 7    In June 2011, the court entered a judgment of foreclosure and sale with respect to the Northbrook property in favor of the bank.  On the bank's motion, the court subsequently amended the judgment to reflect that the Contractor's liens – recorded more than four months

after the completion of work – were subordinate and inferior to the bank's mortgage.

¶ 8     In November 2013, the Contractor and the Subcontractor filed cross-motions for summary judgment.  The Subcontractor's motion acknowledged that the parties had filed prior cross-motions for summary judgment, that the court previously found that certain questions of fact precluded judgment on the sole remaining count – breach of contract (Count III) – of the Subcontractor's counter-complaint, and that the parties had since engaged in substantial discovery and entered into stipulations in an effort to eliminate any material question of fact.

¶ 9     The circuit court subsequently entered an order denying the Subcontractor's motion for summary judgment and granting the Contractor's motion for summary judgment.  The court rejected the Subcontractor's contention that the Contractor was "barred from bringing the condition precedent as a contractual defense due to the alleged representations and warranties breached by [the Contractor]," *i.e.*, an alleged statement from the Contractor's representative to the Subcontractor's representative that funding had already been secured from the Owner.  The court determined that the Contractor's "failure to confirm [the Owner's] funds before allowing [the Subcontractor] to begin performance" could not be considered a breach "as there is nothing in the four corners of the contract making [the Contractor's] confirmation of funds a term or part of performance."

¶ 10    After quoting portions of sections 5.1 and 5.2 of the subcontract, the court further found that *Conte* "is controlling on the instant case," noting that the "payment provision in the subcontract" in *Conte* was "nearly identical to the provision in the Subcontract at issue in the case at bar."  Sections 5.1 and 5.2 provide in part:

> "[5.1]  Provided Subcontractor's rate of progress and general performance
> are satisfactory to the Contractor, and provided that the Subcontractor is in full

4

compliance with each and every provision of the Subcontract Documents, the Contractor will make partial payments to the Subcontractor in an amount equal to 90 percent of the estimated value of work and materials incorporated in the construction and an amount equal to 90 percent of the materials delivered to and suitably and properly stored by the Subcontractor at the Project site, to the extent of Subcontractor's interest in the amounts allowed thereon and paid to Contractor by the Owner, less the aggregate of previous payments, within five (5) days of receipt thereof from the Owner[.] ***

[5.2] Final payment will be made within thirty (30) days after the work called for hereunder has been completed by the Subcontractor to the satisfaction of the Owner and the Contractor and the Contractor has received from the Owner written acceptance thereof together with payment in full for this portion of the work[.] ***"

¶ 11     The circuit court concluded:

"The provisions outlined in the Subcontract at issue clearly make the receipt of payment from the Owner to [the Contractor], the condition precedent to [the Subcontractor's] payment. The condition precedent has not been satisfied as [the Contractor] has not received payment from Owner. Therefore, [the Contractor] did not breach the contract, and [the Subcontractor's] claim fails. Accordingly, [the Contractor] is entitled to summary judgment in its favor as [the Subcontractor] cannot recover on the subcontract."

The circuit court further observed that it did not need to consider extrinsic evidence because the language of the subcontract was clear, but "even if it did, [the Contractor's] and [the

Subcontractor's] course of performance is consistent with both parties' recognition that payment from the Owner to [the Contractor] was a condition precedent to [the Subcontractor] receiving payment." After the circuit court denied its motion for reconsideration, the Subcontractor filed this timely appeal.

¶ 12                                   ANALYSIS

¶ 13     In this appeal, we are reviewing the circuit court's ruling on cross-motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). Summary judgment rulings are reviewed *de novo*. *Christopher B. Burke Engineering, Ltd. v. Heritage Bank of Central Illinois*, 2015 IL 118955, ¶ 9.

¶ 14     The fundamental issue in this case is whether the parties' subcontract requires the Contractor to pay the Subcontractor. While the parties herein interpret the subcontract differently, such disagreement "does not suffice to establish ambiguity." *Gomez v. Bovis Lend Lease, Inc.*, 2013 IL App (1st) 130568, ¶ 14. "A contract is ambiguous if it is subject to more than one reasonable interpretation." *Id.* Although extrinsic evidence may be used to aid in the interpretation of an ambiguous contract, such evidence may not be used to interpret a contract that is unambiguous on its face. *Id.* The construction of a contract presents a question of law, which we review *de novo*. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007).

¶ 15     As the circuit court correctly recognized, the *Conte* decision is relevant to our interpretation of the subcontract at issue. The parties disagree regarding the applicability and effect of the case. In *Conte*, the contractor and subcontractor entered into a subcontract relating to excavation work. *Conte*, 132 Ill. App. 3d at 326. The owner defaulted and the project

terminated; the subcontractor was owed approximately $84,000 for work already performed. *Id.* at 326-27. After failing to recover on its mechanics lien claim against the Owner, the subcontractor sued the contractor for the $84,000. *Id.* at 327. In an affirmative defense, the contractor argued that the parties' subcontract set forth a condition precedent to payment, *i.e.*, that the contractor must first receive payment from the owners of the project under the general contract before it was obligated to pay its subcontractors. *Id.* The *Conte* subcontract included the following provisions:

> " '*ARTICLE 5*: Material invoices submitted before the 25th of the current month will be paid by the 28th of the following month, provided the material so delivered is acceptable, *and if payment for invoiced material has been received by [the contractor] under its general contract. \*\*\**
>
> \* \* \*
>
> *ARTICLE 18*: \*\*\* [I]f the work has been satisfactorily performed and invoice as rendered is approved *and if payment for such labor and material so invoiced has been received by [the contractor] under its general contract, the subcontractor will be paid 85% of invoice as approved, less any payments previously made on account for previous periods. \*\*\*' " (Emphasis in original.) *Id.* at 327-28.

The court granted summary judgment in favor of the contractor and against the subcontractor. *Id.* at 328. On appeal, the subcontractor argued that the provisions were a limitation only as to the time of payment and urged the court to examine factors outside of the subcontract to determine the parties' understanding and intent. *Id.* The contractor responded that the provisions created a condition precedent to payment and there was no ambiguity in the subcontract. *Id.*

¶ 16    In affirming the judgment of the circuit court, the *Conte* appellate court stated: "We do

not believe that the record supports [the subcontractor's] claim that its right to payment by [the contractor] was absolute and not in anyway contingent upon [the contractor's] receiving payment from the owners under the general contract." *Id.* at 329. Although the court acknowledged that "conditions precedent are not generally favored, and courts will not construe stipulations to be a condition precedent when such a construction would result in forfeiture," it found that the "plain, unambiguous language" in the subcontract "binds the parties to a condition precedent." *Id.*

¶ 17    The dissenting opinion in *Conte* discussed section 227 of the Restatement (Second) of Contracts, "Standards of Preference with Regard to Conditions," which states: "(1) In resolving doubts as to whether an event is made a condition of an obligor's duty, and as to the nature of such an event, an interpretation is preferred that will reduce the obligee's risk of forfeiture, unless the event is within the obligee's control or the circumstances indicate that he has assumed the risk." Restatement (Second) of Contracts § 227 (1981). The dissent wrote that comment (b) to section 227 of the Restatement states "that the word 'forfeiture' is used to refer to the denial of compensation that results in such a case." *Conte*, 132 Ill. App. 3d at 330 (Jiganti, J., dissenting), citing Restatement (Second) of Contracts § 227, comment b, at 175 (1981). The dissent noted that the "very first illustration" for comment (b) to section 227 "is a virtual reiteration of the facts in the instant case." *Conte*, 132 Ill. App. 3d at 330-31. The illustration states:

> "1.  A, a general contractor, contracts with B, a sub-contractor, for the plumbing
>
> work on a construction project.  B is to receive $100,000, 'no part of which shall
>
> be due until five days after Owner shall have paid Contractor therefor.'  B does
>
> the plumbing work, but the owner becomes insolvent and fails to pay A.  A is
>
> under a duty to pay B after a reasonable time."  Restatement (Second) of

Contracts § 227, comment b, at 176 (1981).[1]

The dissent concluded that the Restatement (Second) of Contracts, and cases from other jurisdictions that ruled in accordance with the Restatement, "mandate[d] a finding consistent with their conclusions." *Conte*, 132 Ill. App. 3d at 331.

¶ 18      The Contractor here contends that the "interpretive principle" set forth in section 227 of the Restatement "comes into play only if the court has doubts as to whether the contract language specifies a condition precedent." Illinois courts have defined a condition precedent as "an event which must occur or an act which must be performed by one party to an existing contract before the other party is obligated to perform." *Maywood Proviso State Bank v. York State Bank & Trust Co.*, 252 Ill. App. 3d 164, 168 (1993). "The obligations of the parties end in the event that a condition precedent is not satisfied." *Id.*

¶ 19      According to the Contractor, the language of the subcontract in this case – like the language at issue in *Conte* – was "clear and unambiguous in setting out a condition precedent," *i.e.*, because the Owner did not pay, the Contractor is not obligated to pay the Subcontractor. As we do not read the parties' subcontract as establishing such a condition precedent, we reject the Contractor's position. Section C of the parties' subcontract provides that "[t]he Contractor agrees to pay the Subcontractor for the full, faithful and complete performance of this Subcontract the sum of $817,000 subject to additions and deductions for changes agreed upon in writing signed by FCL BUILDERS, INC or determined as hereinafter set forth, *and further agrees* to make all partial and final payments on account thereof solely in accordance with the terms and provisions of the Subcontract Documents including, but without restriction thereto, the provisions of Section D, Article 5 of this Subcontract." (Emphasis added.) Based on the "*and further agrees*"

---

[1] We quote the illustration, which was paraphrased by Justice Jiganti in his *Conte* dissent.

language, we read this provision as reflecting two separate obligations of the Contractor: to pay an amount to the Subcontractor for "full, faithful and complete performance" of the subcontract *and* to make partial and final payments on account thereof solely in accordance with the subcontract documents, including Article 5 of the subcontract.

¶ 20    Section 5.1 in Section D, Article 5 provides, in part, that "the Contractor will make partial payments to the Subcontractor in an amount equal to 90 percent of the estimated value of work \*\*\*, to the extent of Subcontractor's interest in the amounts allowed thereon and paid to Contractor by the Owner, less the aggregate of previous payments, within five (5) days of receipt thereof from the Owner[.]"  Section 5.2 of the subcontract provides, in part:  "Final payment will be made within thirty (30) days after the work called for hereunder has been completed by the Subcontractor to the satisfaction of the Owner and the Contractor and the Contractor has received from the Owner written acceptance thereof together with payment in full for this portion of the work[.]"  Unlike in *Conte*, wherein the subcontractor would be paid "*if*" the contractor was paid by the owner, there is no express language in the subcontract at issue which plainly and unambiguously establishes payment by the Owner as a condition precedent to the Contractor's obligation to pay the Subcontractor.  Consistent with section C of the subcontract, we interpret the language of sections 5.1 and 5.2 as addressing the *amounts* and *timing* of payments, but not the threshold obligation of the Contractor to compensate the Subcontractor for its work under the subcontract.  Such interpretation is further bolstered by section 5.4 of the subcontract, which provides that "[n]otwithstanding the *amounts and times of payments* set forth above, the Contractor at any time may make advance payments to the Subcontractor if, in the Contractor's sole discretion, such advances will aid the Subcontractor in the performance of this Subcontract."  (Emphasis added.)  Section 5.4 supports the interpretation that sections 5.1 and 5.2 address the

*mechanics* of payment, but not the fundamental requirement that the Contractor pay the Subcontractor.

¶ 21   Citing *Killianek v. Kim*, 192 Ill. App. 3d 139 (1989), and *Coey v. Lehman*, 79 Ill. 173 (1875), the Contractor argues that "[w]here a construction contract specifies an event that is to occur before a payment obligation arises, the specified event is deemed a condition precedent to the payment obligation."  In *Killianek*, a homeowner's contract with a contractor provided: " 'Final payment, constituting the entire unpaid balance of the Contract Sum, shall be paid by the Owner to the Contractor when the work has been completed, the contract fully performed, and a final Certificate for Payment has been issued by the Architect.' "  *Killianek*, 192 Ill. App. 3d at 141.  The homeowner argued that "inasmuch as the contractor has not provided him with a final certificate for payment" pursuant to their contract, "the lack of compliance therewith amounts to an unfulfilled condition precedent, and there is no obligation on him to perform," *i.e.*, to make the final payment under their contract. *Id.*  The appellate court agreed with the homeowner, finding that the parties "were bound by the underlying agreement, save that the obligation of the owner to make final payment is not binding as it was the subject matter of a condition precedent which was never satisfied." *Id.* at 143.

¶ 22   In *Coey*, the contract between the contractor and certain subcontractors provided that 85% of the contract price was to be paid as the work progressed and the 15% balance was to be paid upon acceptance of the work by the superintending architect. *Coey*, 79 Ill. at 175.  The architect ultimately found the work and materials to be unsatisfactory and thus did not provide the certificate for payment of the 15% balance. *Id.* at 175-76.  The trial court ruled in favor of the subcontractors. *Id.* at 174.  The Illinois Supreme Court reversed, noting that "where the parties to a building contract agree that the superintendent shall pass upon the work, and certify

to the payments to be made, his decision is binding, unless fraud or mistake on his part shall be shown." *Id.* at 176.

¶ 23    *Killianek* and *Coey* do not guide our analysis herein.  In both cases, the condition precedent was approval by the architect.  The imposition of such a requirement as a condition precedent to a payment obligation appears logical and practical:  a contractor or homeowner presumably should not be obligated to pay for work or materials that may be unsafe or otherwise unsatisfactory.  Furthermore, the proper completion of work in *Killianek* and *Coey* likely was within the control of the party subject to the condition precedent.  Conversely, the parties herein have stipulated that "[the Subcontractor] performed, in a good and workmanlike manner, all the work and provided all the materials requested by [the Contractor] in connection with the Subcontract."  As stated by the *Conte* majority, "[c]onditions precedent are not generally favored, and courts will not construe stipulations to be a condition precedent when such a construction would result in forfeiture," *i.e.*, denial of compensation.  *Conte*, 132 Ill. App. 3d at 329; accord *Premier Electrical Construction Co. v. American National Bank of Chicago*, 276 Ill. App. 3d 816, 824-25 (1995).  Without clear language indicating the parties' intent that the Subcontractor would assume the risk of non-payment by the Owner, we will not construe the challenged language in the subcontract as a condition precedent.

¶ 24    Although not binding, the decision of the Seventh Circuit Court of Appeals in *BMD Contractors, Inc. v. Fidelity and Deposit Co. of Maryland*, 679 F.3d 643 (7th Cir. 2012), sets forth a useful framework for our analysis.  The *BMD* court, applying Indiana law, considered whether a contractor's[2] surety was obligated to pay a subcontractor after the owner's bankruptcy triggered "a series of payment defaults to flow down the levels of contractors and

---

[2] The *BMD* "contractor" was itself a subcontractor in the multi-tiered construction project.  For clarity purposes, we refer to this entity as the "contractor."

subcontractors." *Id.* at 645. The subcontract at issue provided, in part: "**IT IS EXPRESSLY AGREED THAT OWNER'S ACCEPTANCE OF SUBCONTRACTOR'S WORK AND PAYMENT TO THE CONTRACTOR FOR THE SUBCONTRACTOR'S WORK ARE CONDITIONS PRECEDENT TO THE SUBCONTRACTOR'S RIGHT TO PAYMENTS BY THE CONTRACTOR.**" (Emphasis in original.) *Id.* at 647. The Seventh Circuit held that because the contractor was never obligated to pay the subcontractor, the subcontractor could not recover against the surety on the payment bond. *Id.* at 646. In so holding, the court discussed the distinction between "pay-if-paid" and "pay-when-paid" provisions:

" *** Two increasingly common contractual provisions address distinct kinds of payment risk in construction subcontracting: pay-if-paid clauses and pay-when-paid clauses.

A pay-*when*-paid clause governs the timing of a contractor's payment obligation to the subcontractor, usually by indicating that the subcontractor will be paid within some fixed time period after the contractor itself is paid by the property owner. A typical clause might say: 'Contractor shall pay subcontractor within seven days of contractor's receipt of payment from the owner.' Robert F. Carney & Adam Cizek, *Payment Provisions in Construction Contracts and Construction Trust Fund Statutes*, 24 CONSTRUCTION LAW, Fall 2004, at 5, 5. These clauses address the timing of payment, not the obligation to pay. They do not excuse a contractor's ultimate liability if it does not receive payment by the property owner, so they do not transfer the risk of 'upstream' insolvency from contractor to subcontractor and on down the chain.

In contrast, a pay-*if*-paid clause, as the name suggests, provides that a

subcontractor will be paid *only if* the contractor is paid and thus ensures that each contracting party bears the risk of loss only for its own work. A typical clause of this type might say: 'Contractor's receipt of payment from the owner is a condition precedent to contractor's obligation to make payment to the subcontractor; the subcontractor expressly assumes the risk of the owner's nonpayment and the subcontract price includes the risk.' *Id.* at 5-6." (Emphasis in original.) *BMD Contractors*, 679 F.3d at 648-49.

Determining that the subcontract language is "properly construed as a pay-if-paid clause" (*id.* at 645), the Seventh Circuit concluded that "the condition-precedent language is clear and sufficient on its face to unambiguously demonstrate the parties' intent" that the subcontractor would not be paid unless the contractor was paid. *Id.* at 649.

¶ 25    Applying the foregoing framework, sections 5.1 and 5.2 of the parties' subcontract include pay-when-paid – not pay-if-paid – provisions. Although neither "if" nor "when" is used in the relevant portions of those sections, the sections address the timing of payment, not the obligation to pay. Furthermore, there is no clear indication in the subcontract of any intent to "transfer the risk of 'upstream' insolvency from contractor to subcontractor." *BMD Contractors*, 679 F.3d at 649.

¶ 26    We recognize that the contractual provisions at issue in *Conte* have occasionally been referred to as "pay-when-paid" provisions (*e.g.*, *Brown & Kerr Inc. v. St. Paul Fire & Marine Insurance Co.*, 940 F. Supp. 1245, 1249 (N.D. Ill. 1996)). We believe the *Conte* provisions are more accurately termed "pay-if-paid" clauses. Ultimately, however, we need not categorize the language of *Conte*. Instead, we observe that the *Conte* majority considered the plain and unambiguous language of the subcontract as providing that the subcontractor would be paid *only*

14

*if* the contractor is paid "and thus ensure[d] that each contracting party [bore] the risk of loss only for its own work." *BMD Contractors*, 679 F.3d at 649.

¶ 27    The Contractor argues that the Subcontractor "asks this Court to 'disavow' *Conte* [citation] and to instead adopt a new set of principles whereby conditions precedent will not be enforced if they are outside the control of the obligee or if the language of the contract does not include the literal label 'condition precedent.' "  Citing two Illinois Supreme Court decisions addressing the doctrine of *stare decisis* – *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81-82 (2004) and *Wakulich v. Mraz*, 203 Ill. 2d 223, 230 (2003) – the Contractor discourages departure from precedent, *i.e.*, the majority decision in *Conte*.  However, we do not "disavow" *Conte*, but rather distinguish its facts from those of this case.  We agree with the Contractor that there are no "magic words," and we consider the determination of the contracting parties' intent from the clear and ordinary language contained within the subcontract as requiring case-by-case analysis. Our decision herein does not "overhaul" Illinois law, as the Contractor suggests.

¶ 28    Although not necessary for our analysis, we observe that courts in other jurisdictions have recognized the distinction between pay-if-paid and pay-when-paid provisions and have treated such provisions differently.  For example, in *Evans, Mechwart, Hambleton & Tilton, Inc. v. Triad Architects, Ltd.*, 965 N.E.2d 1007, 1014 (Ohio Ct. App. 2011), the Court of Appeals of Ohio reversed the lower court's grant of summary judgment in favor of a contractor that disclaimed any obligation to pay its subcontractor because the owner had not paid the contractor. Citing section 227 of the Restatement (Second) of Contracts, the appellate court concluded that the subcontract contained pay-when-paid and not pay-if-paid provisions, and thus the contractor breached its contractual duty to pay the subcontractor within a reasonable time.  *Id.* at 1014, 1017.  See also *Lemoine Co. of Alabama, L.L.C. v. HLH Constructors, Inc.*, 62 So. 3d 1020,

1026-27 (Ala. 2010) (discussing paid-if-paid and pay-when-paid clauses); *Otis Elevator Co. v. Hunt Construction Group, Inc.*, 859 N.Y.S.2d 850, 851 (N.Y. App. Div. 2008) (stating that "the pay-when-paid clause in the subcontract merely regulated the time of payment, and did not shift the risk of owner nonpayment to plaintiff"); *Koch v. Construction Technology, Inc.*, 924 S.W.2d 68, 71 (Tenn. 1996) (noting that the "overwhelming majority of jurisdictions do not construe" pay-when-paid clauses "so as to release the general contractor from all obligation to make payment to the subcontractor in case of nonperformance by the owner").

¶ 29    Furthermore, we note that a federal district court applying Illinois law in *Brown & Kerr Inc. v. St. Paul Fire & Marine Insurance Co.* found that a "pay when paid" clause in a subcontract did not preclude payment under a surety bond when the subcontractor had satisfactorily performed its obligation under the subcontract.  *Brown & Kerr*, 940 F. Supp. at 1250.  The court opined that the dissent in *Conte* "was later codified" in section 21(e) of the Illinois Mechanics Lien Act, which provides, in part, that "[a]ny provision in a contract, agreement, or understanding, when payment from a contractor to a subcontractor or supplier is conditioned upon receipt of the payment from any other party including a private or public owner, shall not be a defense by the party responsible for payment to a claim brought under Section 21, 22, 23, or 28 of this Act against the party."  770 ILCS 60/21(e) (West 2014).  "Although this provision applies only to cases brought under the Illinois Mechanic's Lien Act," the district court stated, "it illustrates the Illinois Legislature's concern with construing a 'pay when paid' clause as a condition precedent to a subcontractor's payment."  *Brown & Kerr*, 940 F. Supp. at 1250.

¶ 30    In sum, the subcontract herein requires the Contractor to pay the Subcontractor and does not impose any condition precedent on such a fundamental obligation.  It does not contain any

plain and unambiguous statement sufficient to overcome our disfavor for conditions precedent, particularly as to payment obligations. We view this result as consistent with Illinois policy and law.

¶ 31    In light of our holding, we need not consider the Subcontractor's contention that the incorporation of the contract into the subcontract imposed obligations upon the Contractor to have confirmed irrevocable or unconditional financing. Furthermore, we need not consider the Subcontractor's argument that the Contractor "is barred from asserting that the unavailability of funds releases it from liability to" the Subcontractor because the Contractor "knew it misrepresented that it confirmed irrevocable and unconditional financing." We observe, however, that Contractor presumably was better positioned than the Subcontractor to confirm the Owner's financial viability. Absent an expression in the subcontract indicating the parties' clear intent to allocate the risk of nonpayment to the Subcontractor, we will not interpret the subcontract so as to create or shift such risk.

¶ 32                            CONCLUSION

¶ 33    The judgment of the circuit court of Cook County granting summary judgment in favor of the Contractor and against the Subcontractor is hereby reversed. This matter is remanded to the circuit court for further proceedings consistent with this order.

¶ 34    Reversed; remanded.