# Illinois Official Reports

## Appellate Court

*Gomez v. Bovis Lend Lease, Inc.*, 2013 IL App (1st) 130568

| | |
|---|---|
| Appellate Court Caption | CARLOS GOMEZ, Plaintiff, v. BOVIS LEND LEASE, INC., JAMES McHUGH CONSTRUCTION COMPANY, and PERI FORMWORK SYSTEM, INC., Defendants (Bovis Lend Lease, Inc., and James McHugh Construction Company, Third-Party Plaintiffs-Appellants; Peri Formwork System, Inc., Third-Party Defendant-Appellee). |
| District & No. | First District, Third Division<br>Docket No. 1-13-0568 |
| Filed | December 24, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a negligence action against the construction manager and the contractor for a major construction project where plaintiff was injured when he fell through a plywood board that covered an "infill," the entry of summary judgment against defendants on their contribution claim against a subcontractor engaged in providing designs and support for the infill areas was affirmed on appeal, since the subcontract was ambiguous as to the subcontractor's duties, but the undisputed extrinsic evidence established that the subcontractor had no duty to provide support for the infill areas. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-003250; the Hon. Daniel T. Gillespie, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | Mark E. Christensen, Katherine A. Jones, and Nathan A. Hall, all of Christensen & Ehret, LLP, of Chicago, for appellants. |
| | |
| | Bartly J. Loethen and Trisha Cole, both of Synergy Law Group, of Chicago, and Donald E. English, Jr., and Timothy M. Hurley, both of Miles & Stockbridge P.C., of Baltimore, Maryland, for appellee. |
| | |
| Panel | PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion. Justices Neville and Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1     A worker injured at the construction site for the 102-story Trump International Hotel and Tower brought a negligence claim against the construction manager and the contractor. They, in turn, brought a contribution claim, which was dismissed on a motion for summary judgment. Bovis Lend Lease, Inc., the construction manager, and James McHugh Construction Co., the contractor, now ask us to reverse the entry of summary judgment on their contribution claim against third-party defendant, PERI Formwork System, Inc. Bovis and McHugh assert that the contract between McHugh and PERI required PERI to provide designs and support for the infill areas, and a genuine issue of material fact exists as to whether PERI's failure to provide that support was a proximate cause of the worker being injured. We affirm the order of summary judgment on the basis that while the contract is ambiguous on the subject of PERI's contractual duties, the undisputed extrinsic evidence demonstrates that PERI had no duty to provide support for the infill areas.

¶ 2                                    BACKGROUND
¶ 3     Bovis and McHugh were Trump International Hotel and Tower's (Trump Tower) construction manager and general contractor, respectively. On July 11, 2005, McHugh hired PERI to design and supply Trump Tower's concrete forming systems and to provide on-site technical support for the concrete forming systems. McHugh used the concrete forming systems to create floors by pouring concrete into PERI's metal and wood forms. After the concrete dries, the forms are removed. Infills occur when the forming system's prefabricated frames do not match the floor's size or shape, resulting in a small gap between the formed concrete and a wall or column. The parties agree that PERI did not provide any designs,

drawings, or technical support for the infills. McHugh supplied and placed plywood boards over the infill areas.

¶ 4    On June 18, 2008, plaintiff Carlos Gomez, while working on the plumbing on the eighty-sixth floor, stepped on a plywood board that covered an infill. The plywood board broke, sending Gomez to the deck of the eighty-fifth floor.

¶ 5    McHugh and PERI had worked together on about 20 projects before Trump Tower, and PERI had not provided infill design services or technical support on any of them. After the worker's fall, Bovis conducted an investigation, which found nothing deficient in PERI's performance. Similarly, McHugh never indicated that PERI breached the contract or requested PERI to perform support work for the infill areas.

¶ 6    On March 17, 2009, Gomez sued Bovis and McHugh. Almost a year later, on February 3, 2010, Bovis and McHugh brought their third-party contribution claim against PERI. They alleged that the contract between McHugh and PERI imposed a duty on PERI to provide designs, drawings, and technical support for Trump Tower's infill areas and that PERI's failure to do so was a proximate cause of Gomez's accident.

¶ 7    PERI moved for summary judgment, arguing that nothing in the contract imposed on PERI the duty asserted by Bovis and McHugh and nothing in the previous dealings and course of performance between McHugh and PERI did either. Alternatively, PERI argued that even if it had a contractual duty to provide support for the infill areas, that duty was not a proximate cause of Gomez's fall. PERI presented expert testimony that McHugh used a cracked and defective plywood board to cover the infill areas. The expert further testified that McHugh's use of the defective board was the sole proximate cause for Gomez's accident.

¶ 8    Bovis and McHugh maintained that PERI's duty to provide support for the infill areas arose out of PERI's contractual obligation to assist with forming systems, because infills are a type of forming system. McHugh's vice president testified that none of PERI and McHugh's earlier projects matched this one in terms of sheer size. Accordingly, he drafted the contract to include "all the concrete forming systems to protect McHugh's interests." Bovis and McHugh also attached an affidavit of an expert witness to the affect that PERI's failure to provide additional support to the infill was a proximate cause of Gomez's fall. The court granted PERI's motion and later denied Bovis and McHugh's motion to reconsider.

¶ 9                                                    ANALYSIS

¶ 10   Bovis and McHugh argue: (1) the contract unambiguously requires PERI to provide support to the infill areas; (2) even if the contract is ambiguous, the use of extrinsic evidence to interpret the contract creates genuine issues of material fact; and (3) the affidavit of their expert witness on proximate cause creates genuine issues of material fact.

¶ 11   We review a trial court's order granting summary judgment *de novo*. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Summary judgment should be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). The court must construe all

- 3 -

pleadings, depositions, admissions, and affidavits against the movant and in favor of the opponent to determine whether a genuine issue of material fact precludes summary judgment. *Williams*, 228 Ill. 2d at 417.

¶ 12                          Contract Interpretation–Ambiguity

¶ 13    Summary judgment is generally appropriate when deciding questions of contract interpretation as it involves a question of law. *William Blair & Co. v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 334 (2005); *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007). The court must attempt to give effect to the parties' intentions when interpreting a contract. *Gallagher*, 226 Ill. 2d at 232. The best indication of the parties' intent is the plain meaning of the contract's language. *Id.* at 233. Contract language must be interpreted in light of the contract as a whole. *Board of Trade v. Dow Jones & Co.*, 98 Ill. 2d 109, 122-23 (1983).

¶ 14    A contract is ambiguous if it is subject to more than one reasonable interpretation. *William Blair & Co.*, 358 Ill. App. 3d at 334. If a contract is unambiguous on its face, extrinsic evidence may not be used to interpret it. *Id.* But, extrinsic evidence may be used to aid in interpreting an ambiguous contract. *Id.* The mere fact that the parties disagree over the contract's interpretation does not suffice to establish ambiguity. *Intersport, Inc. v. National Collegiate Athletic Ass'n*, 381 Ill. App. 3d 312, 319 (2008).

¶ 15    The contract between Bovis and PERI provides:

"PERI agrees to design, engineer, detail, fabricate, deliver and lease (or sell) to Contractor for upon the terms stated herein all the forming systems required to form the concrete for the project known as Trump International Hotel and Tower."

¶ 16    The following paragraph states:

"The systems shall include, but not be limited to the following: Slab forming system for all supported floors, all forms required for the helix walls and slabs; CPP perimeter protection system, perimeter ACR R column forming system and all forms for every other cast-in-place concrete element on the project except for the round columns and core."

¶ 17    Bovis and McHugh argue that the language in these clauses is unambiguous and requires PERI to design, draw, and provide support for the infill areas. They assert that infills are a type of forming system, which thereby obligates PERI to provide support for all forming systems. But, the contract makes no reference to infills as a forming system. Bovis and McHugh respond that an infill is both a "slab-forming system" and a "cast-in-place concrete element," which are specifically listed. Bovis and McHugh fail, however, to explain the connection between a "slab-forming system" and "cast-in-place concrete element" and infill areas for the specific purpose of imposing a duty on PERI for support of infill areas.

¶ 18    Bovis and McHugh also argue that other clauses in the contract imply a duty on PERI to provide support for infills, including:

　　• "Drawings and calculations shall be provided for all major systems, including, but not limited to Skydeck and Multiflex slab and beam forming (inclusive of reshoring),

- 4 -

CCP system, Helix forming systems (Rundflex and Uniportal), and the Perimeter ACS column system."

• "This contract is intended to be all inclusive of the forming requirements for every cast-in-place concrete component of the project unless specifically excluded herein."

• "PERI shall provide all safety devices and equipment as specified by McHugh in it's [*sic*] project safety plan, as required by government regulation or as is normally used with PERI's systems are included."

• "PERI shall provide all required shop drawings and assembly drawings."

• "PERI shall provide technical assistance as required by McHugh."

• "Purchase of Skydeck System complete with new fin form facing *** PERI shall periodically review the condition of the form facing materials and make recommendations to McHugh."

• "Rental equipment is inclusive of *** all other additional equipment as required to form all supported slabs, drop heads, beams, slab steps and other components of the supported slabs for the project."

• "Pricing includes on site technical support and complete formwork drawings detailing the proper use of PERI systems. PERI's technical personnel will ensure that Contractor's personnel are adequately trained in the use, assembly and disassembly of the different systems. PERI will visit the site as required to insure that the proper use and maintenance of the systems are being performed and will document the same."

• "PERI will provide all necessary shop drawings and design and technical design services for the application of all material supplied hereunder."

¶ 19   None of the clauses address PERI's duties regarding infill areas, nor do Bovis and McHugh describe how these clauses bolster their argument. The only explicit mention of "infill" in the contract excludes the supply of "[p]lywood for Multiflex forming systems or Skydeck infills" from PERI's duties. This mere mention affords no clue as to what duties PERI had regarding infill areas.

¶ 20   PERI emphasizes that the contract never specifically references infill areas, other than the plywood board exclusion. Moreover, PERI points out that under the contract it must "provide all necessary shop drawings and design and technical design services for the application of all material supplied hereunder," which PERI construes as imposing a duty on PERI to provide design drawings or technical support only in connection with materials that PERI was required to supply. Since PERI was not required to supply the plywood for the infills, PERI argues that it likewise had no duty to provide drawings or technical support for the infills. But this interpretation ignores that nothing in the contract explicitly excludes PERI from providing support for materials it does not supply. In addition, the clause does not address the engineering or technical support services that are also at issue.

¶ 21   Ambiguity exists when the contract provisions can reasonably be read in more than one way. *William Blair & Co.*, 358 Ill. App. 3d at 334. In *William Blair*, defendant hired plaintiff to find a potential buyer for its business. *Id.* at 327. The contract entitled plaintiff to a commission as long as plaintiff introduced a party to defendant who ultimately purchased the business, but

if either party terminated the contract, the commission would be paid only if the buyer engaged in "substantive discussions" before the contract's termination. *Id.* Plaintiff introduced a buyer who purchased the business after the contract's termination. *Id.* At issue was whether plaintiff's confidentiality agreement and phone calls with the buyer constituted "substantive discussions." *Id.* at 332-33. The court found the term ambiguous because "substantive discussions" was open to differing interpretations. *Id.* at 336. See also *Clayton v. Millers First Insurance Cos.*, 384 Ill. App. 3d 429, 436-37 (2008) (insurance policy was ambiguous because the term "ward" was open to differing interpretations).

¶ 22    As in *William Blair*, ambiguity arises because PERI's duty, if any, regarding infills is open to differing interpretation. The contract's only reference to infills, the exclusion of infill plywood boards, offers no guidance. Hence, we cannot ascertain from the four corners of the contract the nature of PERI's duty as to the infill areas and find the contract ambiguous.

¶ 23                                    Extrinsic Evidence

¶ 24    The use of extrinsic evidence turns on the nature of the facts considered in resolving the ambiguity. See *Loyola Academy v. S&S Roof Maintenance*, 146 Ill. 2d 263, 272 (1992) (usually question of fact when court uses extrinsic evidence to interpret contract). If determination of the parties' intent requires resorting to facts in dispute, then the contract must be construed by the trier of fact. *Bank of Ravenswood v. Polan*, 256 Ill. App. 3d 470, 474 (1993). But if the parties' intent can be determined solely from facts not in dispute, then the court can decide the issue as a matter of law. *Id.* See also *William Blair & Co.*, 358 Ill. App. 3d at 342 (extrinsic evidence may be used at summary judgment to construe the contract's meaning as matter of law when facts not in dispute); *McCarthy v. Illinois Casualty Co.*, 408 Ill. App. 3d 526, 535-36 (2011) (contract interpretation was a matter of law when extrinsic evidence showed clear intent of parties); *Ridenhour v. Mollman Publishing Co.*, 66 Ill. App. 3d 1049, 1051 (1978) (undisputed evidence that employer paid a severance can be used to interpret employment contract as matter of law).

¶ 25    Bovis and McHugh argue that the contract's integration clause precludes the court from using extrinsic evidence to interpret the contract. Paragraph 12, labeled "Stipulations and Clarifications," states:

> "This Agreement represents the whole Contract between the parties, any course of dealing, usage of trade, or actual course of performance to the contrary notwithstanding, and no representations or agreements made by either party, or by any representative of either party, in the negotiations leading to this Agreement, or otherwise, which are not expressly reserved herein writing shall be binding on such party. Failure of PERI or Contractor to insist in any one or more instances upon strict performance of any on [*sic*] of the provisions of this contract, or to take advantage of any of its rights hereunder, shall not be construed as a waiver of any such provisions or the relinquishment of any such rights, but the same shall continue and remain in full force and effect."

¶ 26    A court may not use extrinsic evidence to interpret a facially unambiguous contract if the contract contains an integration clause. *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d

- 6 -

457, 466 (1999). But an integration clause will not preclude the court's consideration of extrinsic evidence in the event the contract is ambiguous. See *Asset Recovery Contracting, LLC v. Walsh Construction Co. of Illinois*, 2012 IL App (1st) 101226 (where contract ambiguous, extrinsic evidence used to interpret contract despite presence of integration clause). The integration clause in McHugh and PERI's contract does not prevent the court from relying on extrinsic evidence because we find the contract ambiguous.

¶ 27    Bovis and McHugh further argue that the court may not decide the summary judgment motion based on the extrinsic evidence because "Peri and McHugh rely on conflicting extrinsic evidence." Contrary to Bovis and McHugh's contention, the parties' intent can be determined solely by considering the facts not in dispute. Bovis and McHugh did not dispute any of PERI's evidence regarding the parties' previous dealings or course of performance.

¶ 28    The extrinsic evidence in the record reveals that McHugh and PERI worked on about 20 projects before this project and on none of them did McHugh request or PERI provide McHugh with design or other support services for infill areas. While Bovis and McHugh argue that these previous dealings are irrelevant because the Trump Tower project was larger than any of the other projects, the size of the project should not make a difference. But even if the enormity of this project did make a difference, McHugh would have been expected 2to be explicit on PERI's duty to provide infill support.

¶ 29    In addition, during construction, McHugh never requested that PERI provide designs, drawings, or support regarding infill areas, either before or after Gomez fell. McHugh paid PERI in full for its work and at no time indicated any deficiency with respect to PERI's performance. Also, before filing the contribution claim, McHugh never suggested to PERI that PERI had a duty to provide support to the infill areas.

¶ 30    Thus, PERI's extrinsic evidence on previous dealings between McHugh and PERI, as well as the parties' performance on this project, establishes PERI had no duty to provide designs or other support for the infill areas. PERI's extrinsic evidence is undisputed and convincing on this point. Accordingly, PERI owed no duty to provide support to the infill areas, and we affirm the grant of summary judgment on the contribution claim.

¶ 31    Given our resolution of this issue, we need not address the question of proximate cause, including issues raised by Bovis and McHugh's expert witness's affidavit.

¶ 32                            Occupational Safety and Health Act

¶ 33    Bovis and McHugh advance the notion that PERI's duty to provide support for the infill areas arose due to its status as a "specialty contractor" under the Occupational Safety and Health Act (29 U.S.C. § 651 *et seq.* (2000)). The contention lacks reasoning or citation to authorities, and, therefore, we deem it waived. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (appellant's brief must contain "citation of the authorities and the pages of the record relied on"); *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 21.

¶ 34    Affirmed.