2021 IL App (2d) 200572-U
No. 2-20-0572
Order filed September 2, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JEAN ANN DOWNEY, as Trustee of the JEAN ANN DOWNEY TRUST dated 8/15/1990, | ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 16-L-0054 |
| DOWNEY+RIPPE, LLC and TRINITY GUARDION, LLC, | ) ) ) | Honorable Robert W. Rohm, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Zenoff and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) The jury's verdict was against the manifest weight of the evidence, requiring a new trial; (2) the trial court erred in dismissing plaintiff's count requesting declaratory judgment, as the claim did present a justiciable issue.  Reversed and remanded for new trials on all claims.

¶ 2    Plaintiff, Jean Ann Downey, as trustee of the Jean Ann Downey Trust dated 8/15/1990, brought suit against defendant, Downey+Rippe LLC ("D&R"), alleging breach of contract, breach of 815 ILCS 105/3, and breach of oral contract, seeking the payment of loans and interest totaling more than $2.6 million.  In each count, Jean Ann also alleged that defendant, Trinity Guardion

LLC ("Trinity"), was D&R's alter-ego and was jointly and severally liable for the indebtedness. The case proceeded to jury trial, with the trial court reserving to itself all issues regarding Trinity's liability. The jury found in favor of D&R, and the trial court denied the claim against Trinity, finding that the issue of alter-ego and piercing the corporate veil was moot in light of the jury's verdict. The trial court granted leave to Jean Ann to file an amended complaint that restated the original three claims and added a fourth count seeking declaratory judgment "concerning Trinity's responsibility and rights concerning the loans" and a ruling on the claim that Trinity is D&R's alter-ego. The trial court dismissed the amended complaint with prejudice. Jean Ann now appeals from both the entry of judgment on the jury's verdict and the dismissal of the declaratory judgment count of her amended complaint. We reverse the judgment of the circuit court in its entirety and remand the case for new trials on all claims

¶ 3                                    I. BACKGROUND

¶ 4      In 2008, Jean Ann and her husband, Bernard Downey, decided to provide the funding to help two of their adult children, Joe Downey and Mary Ellen Rippe (along with her husband Bruce) establish a business. D&R was formed in 2009, with Joe and Mary Ellen being 50-50 partners. On February 27, 2009, Bernard loaned D&R $50,000. The loan was memorialized in a loan acknowledgment letter, signed by Mary Ellen, that stated:

> "This letter serves as documentation that Bernard and Jean Ann Downey loaned $50,000.00 on February 27, 2009 to Downey+Rippe, LLC that was deposited into the Merrill Lynch account established for the company. Downey+Rippe, LLC member, Mary Ellen Rippe and Joseph Downey, member, collectively agree to pay 8 percent interest on this $50,000.00 to Bernard and Jean and Downey."

Bernard and Jean Ann continued over the next several years to loan more money to D&R, memorializing the loans with similar acknowledgment letters and 8 percent interest rates. In February 2010, D&R repaid $100,000.

¶ 5　　D&R primarily sold furniture and lighting but also developed and filed provisional patents for a mattress cover to be used by hospitals and nursing homes to protect against infection. In December 2010, Joe, Mary Ellen and Bruce formed what would eventually be called Trinity and assigned to it all of D&R's intellectual property and inventory regarding the mattress cover. According to Mary Ellen, Trinity paid nothing for the intellectual property, and there is nothing of record showing any consideration given for the transfer. No documents memorialized the transfer other than an assignment filed with the U.S. Patent and Trademark Office.

¶ 6　　D&R and Trinity conducted business out of the same office, had the same telephone number, used the same computers, telephone system, registered agent and accountant, and stored their inventories at the same warehouse. Both companies had the same principals and employees, and employees served both businesses simultaneously. The companies shared a bank account, and all of Trinity's expenses were paid with money that was loaned to D&R by Bernard and Jean Ann. Trinity never had an operating agreement or member agreement, and it never held any board meetings.

¶ 7　　On April 19, 2011, Bernard, Jean Ann, Joseph, and Mary Ellen executed a letter of agreement, the purpose of which was, at the request of Bernard and Jean Ann, "to change the terms and the agreement that we have been working under." Bernard and Jean Ann were to be assigned a 1/3 interest in both D&R and the predecessor of Trinity "in exchange for" their "invaluable support and continued support." "The partnerships [*sic*] shall share equally among its members in all profits and benefits." Finally, it provided:

"[If] this [*sic*] partnerships and or benefits should survive both Bernard and Jean Ann Downey, it is our collective desire that it not become a part of their estate but be purchased back by Mary Ellen and Joseph equally for the sum of $1,000.00."

All four signed the letter, which was on stationery that included both D&R and Trinity logos.

¶ 8    Shortly thereafter, Bernard and Jean Ann changed their minds about taking an equity position in the companies and told the others that they no longer wished to do it.   No written instrument documented that decision.   The parties had never executed any other documents transferring any interest in either company.   Bernard and Jean Ann never received any membership certificates in either company, nor did they ever receive any K-1 partnership tax returns.   The K-1 returns that were issued each year after April 2011 listed Mary Ellen and Joseph as the sole owners.

¶ 9    Bernard and Jean Ann continued to loan money to the businesses for over a year; however, Jean Ann stopped preparing the loan acknowledgments and kept track of the funds on spreadsheets. Between February 2009 and May 2012, they made 59 loans totaling just over $1,767,000 in principal.

¶ 10    Bernard passed away in January 2012.   Jean Ann requested that D&R and Trinity repay the loans.   They refused.   Negotiations between Jean Ann and D&R regarding repayment continued.   In late 2015, Jean Ann assigned the loans to her trust (the Jean Ann Trust dated 8/15/1990) ("Trust").   Trinity secured outside investment of $1.4 million in August 2015.   Pursuant to an agreement entered into in 2014 to settle litigation between Joseph and Mary Ellen, Joseph then sold his interest in both D&R and Trinity to Mary Ellen.   After a final request for repayment was refused, Jean Ann, as trustee, filed suit, alleging breach of contract, breach of 815 ILCS 105/3, and breach of oral contract.   She also alleged that Trinity was D&R's alter-ego and was jointly and severally liable for the indebtedness.

¶ 11    Jean Ann made a jury demand in her complaint.  She then specifically moved to have the equitable claim against Trinity tried by the jury.  However, the trial court ruled that it would try the issue of piercing the corporate veil, while the jury would try all other issues.

¶ 12    Among the instructions given to the jury was Plaintiff's No. 13, which stated:

>    "In this case Downey & Rippe, LLC claims that to the extent there was a contract, the parties agreed that Downey & Rippe, LLC did not have to repay the loans unless or until there was a profit or sale of Downey & Rippe, LLC.  The Trust has the burden of proving this condition was not part of the contract.  If you find this condition was part of the contract, you must then decide whether there was a profit or sale of Downey & Rippe, LLC.  If a profit or sale did not occur, then the Trust cannot recover."

¶ 13    The jury verdict form contained a series of interrogatories to be answered.  The jury found that Jean Ann proved that there was a contract or contracts and that there was an offer, acceptance, and consideration for each and every advance of money.  However, the jury found that Jean Ann did *not* "prove the condition claimed by Downey & Rippe, LLC, repayment due only upon the profit or sale of Downey & Rippe, LLC, was not a part of the contract or contract(s)."  Further, the jury answered "NO" when asked in an interrogatory if Jean Ann had proven that the profit or sale of D+R had occurred.  Thus, the jury found in favor of D&R.  The trial court then "denied" the alter-ego and piercing the corporate veil claim against Trinity as "moot in light of the jury verdict."

¶ 14    Jean Ann then received leave of court to file an amended complaint, realleging the three counts from the original complaint but adding a fourth count seeking declaratory judgment.  Jean Ann alleged:

>    "In light of the jury verdict, D&R is liable for repayment of the fifty-nine loans upon the sale or profit of D&R.  The issue of Trinity's liability is still uncertain and such

uncertainty significantly and adversely affects the rights and obligations of the parties and the rights and interests of the public."

Trinity had filed a claim for declaratory judgment against Jean Ann in a suit pending in Indiana; the proceedings in that case had been stayed pending a dispositive ruling in the Du Page County case, and D&R had filed a motion to lift the stay. In light of the Indiana case and the certainty of further litigation if D&R ever made a profit or was sold, Jean Ann sought:

"judgment on Plaintiff's claim that D&R and Trinity were treated as a single entity or alter-egos of each other and there is such a unity of interest and ownership that the separate personalities of the corporations no longer exist and adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences."

¶ 15    Trinity moved to dismiss Count IV, arguing that a judgment on that claim would be an advisory ruling and that the trial court lacked subject matter jurisdiction, as there was no justiciable matter. The trial court denied the motion to dismiss but later granted defendants' motion for reconsideration and dismissed Count IV with prejudice, ruling that, while "equity screams" that the court make a ruling, the court lacked subject matter jurisdiction.

¶ 16    This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18    Jean Ann first contends that the jury's verdict in in favor of D&R should be reversed. On appeal from a jury verdict, a reviewing court may not simply reweigh the evidence and substitute its judgment for that of the jury. *Snelson v. Kamm*, 204 Ill. 2d 1, 35 (2003). We may reverse a jury verdict only if it is against the manifest weight of the evidence. *Id.* A verdict is against the manifest weight of the evidence only where conclusions opposite those reached by the jury are

clearly evident, plain, and undisputable. *Paz v. Commonwealth Edison*, 314 Ill. App. 3d 591, 594 (2000). However, a jury's verdict is not contrary to the manifest weight of the evidence where the evidence is conflicting and the jury resolved the conflict. *Templeton v. Chicago & North Western Transportation Co.*, 257 Ill. App. 3d 42, 54 (1993).

¶ 19 Defendants argue that Jean Ann has waived the right to challenge the sufficiency of the evidence as it relates to the jury's verdict. According to defendants, Jean Ann never objected to "the condition precedent instruction as erroneous or insufficient and, in fact, [Jean Ann] assumed the burden to offer these facts at trial." This argument misses the point. Jean Ann is not contesting the propriety or sufficiency of the instruction or the fact that she bore the burden of proof under the instruction; she is challenging the *sufficiency of the evidence* that the condition was actually part of the contract. That she assumed the burden of proof does not affect the lack of sufficient evidence that was needed for the jury to correctly find the condition was a part of the contract. Defendants' argument is not well taken.

¶ 20 The jury found that Jean Ann proved that there was a contract or contracts and that there was an offer, acceptance, and consideration for each and every advance of money. Thus, the existence of the contracts is not at issue. At issue is only whether the evidence supports the jury's finding that Jean Ann failed to prove that repayment of the loans was not conditioned on D&R making a profit or being sold.[1]

¶ 21 The alleged requirement that D&R did not have to repay the loans unless or until there was a profit or sale of D&R is a condition precedent, "an act or event, other than a lapse of time which

[1] Jean Ann does not contest here the jury's finding that she did not prove that the profit or sale of D&R occurred.

must exist or occur before a duty of immediate performance of a promise arises." *Wasserman v. Autohaus on Edens, Inc.*, 202 Ill. App. 3d 229, 236 (1990)). Our task is to determine the intent of the parties when the contract was executed as it relates to the claimed condition precedent. See *In re Marriage of Bohnsack*, 2012 IL App (2d) 110250 ¶ 9. We must examine the language of the agreement and give its terms their plain and ordinary meaning. *Id.* Intent "is ascertained from the words of the instrument and the circumstances contemporaneous to the transaction, including the state of the thing conveyed and the objective to be obtained." *River's Edge Homeowners' Ass'n. v. City of Naperville*, 353 Ill. App. 3d 874, 880 (2004). "A court must construe the meaning of a contract by looking at words used and cannot interpret the contract in a way contrary to the plain and obvious meaning of those words." *Klemp v. Hergott Group, Inc.*, 267 Ill. App. 3d 574, 580 (1994). Courts will not rewrite contracts to suit one of the parties and will not add a term about which an agreement is silent. *Id.* at 581. There is a strong presumption against provisions that easily could have been included in the contract but were not. *Id.*

¶ 22    As in this case, where the language of an agreement is facially unambiguous, a court interprets the contract as a matter of law without the use of extrinsic evidence. *Gomez v. Bovis Lend Lease, Inc.*, 2013 IL App (1st) 130568, ¶ 14. An agreement that is signed by the parties speaks for itself, "and the intention with which it was executed must be determined from the language used in the agreement, without resort to extrinsic evidence." *Id.* This "four corners rule" requires us to initially look to the language of the agreement alone; if it is unambiguous, then we interpret the agreement without resort to parol evidence. *Id.* However, if the agreement's language is susceptible to more than one meaning, then an ambiguity exists, and parol evidence may be considered to aid in resolving the ambiguity. *Id.* "Whether language of an agreement is ambiguous and requires additional evidence for interpretation is a question of law [citation], subject to *de novo*

review." *Id.* However, even in such an instance, parol evidence may not be admissible to show whether the parties intended that an act be a condition precedent to the performance of an obligation. *Knightsbridge Realty Partners, Ltd.-75 v. Pace*, 101 Ill. App. 3d 49, 52 (1981).

¶ 23    The initial loan acknowledgment letter (which served as the template for all subsequent letters) stated:

> "This letter serves as documentation that Bernard and Jean Ann Downey loaned $50,000.00 on February 27, 2009 to Downey+Rippe, LLC that was deposited into the Merrill Lynch account established for the company. Downey+Rippe, LLC member, Mary Ellen Rippe and Joseph Downey, member, collectively agree to pay 8 percent interest on this $50,000.00 to Bernard and Jean and Downey."

¶ 24    As defendants admit, there is absolutely no mention of any condition precedent for payment, let alone that specifically claimed by D&R. Indeed, there is no clause regarding any time for repayment. A note that does not state a definite time for payment is a demand note. *In re Estate of Heck*, 2019 IL App (1st) 182414, ¶ 7; see also 810 ILCS 5/3-108 (West 2016). Thus, the silence of the agreements not only cannot be read to incorporate the claimed condition, it positively refutes such a claim and, as a matter of law, must be read to allow demand for repayment at any time.

¶ 25    Even if we were to look at parol evidence to determine the intent of the parties, we would find the jury's verdict to be against the manifest weight of the evidence. For example, defendants cite to the testimony of Joe Downey as support for the jury's finding that repayment was based on D&R's profit or sale. Joe testified that, in the initial discussions regarding the formation of D&R, "we talked about paying it back through the profits of the company and the—or the sale of the

company." When he was asked to "explain again" the "structure of that funding and all the terms that you and Bernard and the partners agreed to," Joe stated:

"He [Bernard] was going it [*sic*] give us the start-up money. It was a loan to our company. It was an interest rate of eight percent and *it was to be paid back as soon as possible*. He envisioned that that amount of money, $240,000, roughly, would give us a jump start and he was willing to commit that.

And one of the things he wanted to do in return was he wanted to be kept informed with what was going on with the business." (Emphasis added.)

Joe emphasized that the loan was not made to Mary Ellen and him personally but was to D&R. When asked again about the terms of the loan, Joe mentioned the interest rate and that Bernard wanted to be kept informed about what was going on with the business; however, Joe did not mention any terms regarding paying back the loan. When asked if he and Mary Ellen were required to personally pay the interest on the loan, the following colloquy then took place:

"Q. Were you and your—Mary Ellen to pay back the interest personally or was the company to pay back the interest?

A. No, never was it a personal loan, never, never. And it was a loan to the company to be paid back through the profits. See, my father was very confident that we were going to be successful. He was happy to and very generous to help us start this company.

Q. Would the interest be paid back by the company or by you?

A. By the company, right."

Joe was eventually asked what the terms of all the loans to D&R were. He answered:

"These were loans to Downey and Rippe and the companies that make up Downey and Rippe. These loans were to be paid back with an eight percent interest as soon as

- 10 -

possible, meaning, that as we made profits we were to pay the loans back through those profits. And if we should ever sell the business or bring in a substantial partner which we considered selling part of the business, the proceeds of that were to go to my mother and father."

¶ 26 Such testimony never clearly established any agreement of conditional payment. Joe said that they "talked about" paying the loans back from profits or the sale of the company. Sometimes he mentioned profits or sale when asked about the terms, sometimes he said "as soon as possible." Sometimes he did not mention any terms regarding paying back the loan. None of the other evidence raised by defendant (including deposition and interrogatory evidence that Jean Ann points out was not presented to the jury) was any more concrete or convincing.

¶ 27 We must also point out the nebulous nature of the term "profit."[2] For example, Black's Law Dictionary provides definitions for "Profit," "Gross Profit," Marginal Profit," and "Pre-Depreciation Profit." See https://thelawdictionary.org/profit/ (last viewed August 18, 2021). Other methods of "profit" calculation, such as pre-tax profit, exist. With nothing more, it is impossible to determine which method of calculation the parties could have been discussing, much less intended to be part of the agreement. Such "evidence" is clearly insufficient to overcome the terms (or lack of same) contained in the valid contracts found by the jury. We agree with Jean Ann that the jury's finding that she had not proved the condition claimed by D&R was not a part

---

[2] We also note that the continual accrual of 8 percent interest on loans of $1.7 million dollars (a current liability) certainly pushes the possibility of turning a profit further and further into the future, as the total liability only increases.

of the contracts was against the manifest weight of the evidence. Therefore, we reverse the judgment entered on the jury's verdict and remand for a new trial.

¶ 28    We must also reverse and remand the trial court's dismissal of Count IV of Jean Ann's amended complaint. First, and obviously, that claim must be tried again in light of the new jury trial on the other counts. However, secondly, we conclude that the trial court erred in its dismissal of the claim for lack of justiciability, and such issue may arise again on retrial. The dismissal of a claim on the basis of justiciability presents a question of law to which we give *de novo* review. See *Morr-Fitz, Inc v. Blagojevich*, 231 Ill. 2d 474, 488 (2008).

¶ 29    In dismissing Count IV of Jean Ann's amended complaint, the court stated:

> "This would be, this would be in the nature of an advisory opinion. It's premature. It is not moot by any stretch of the imagination. It's important. It's just not ripe. The jury said there was no breach.

> Now, it doesn't matter if I agree with that or disagree with that. It doesn't matter. That is binding on this Court. There was no breach and, therefore, a determination of the rights of the parties under this contract or contracts is premature until a breach occurs."

¶ 30    The trial court was incorrect that it was bound by the jury's verdict; the court had other questions to answer outside of those answered by the jury. For example, after finding that the Trust failed to prove that the condition was not part of the contract, the jury answered "NO" to the question "Did the Trust prove the condition to the contract or contracts, the profit or sale of Downey & Rippe, LLC, occurred?" However, the jury was not asked to determine if Trinity was the alter-ego of D&R or whether *Trinity* made a profit or was sold. There was evidence presented that Trinity had secured outside investment of $1.4 million in August 2015. If Trinity was the alter-ego of D&R, as Jean Ann contended, this stock sale may well have qualified as a sale that

would have fulfilled the condition that the jury found in the contract, thereby requiring a verdict in Jean Ann's favor. The jury was not tasked with making such findings, but the trial court was. The jury's finding that D&R had not breached the contract did not in any way prohibit the trial court from ruling on the alter-ego issue. In fact, the jury's finding made resolution of the issue of Trinity as D&R's alter-ego absolutely necessary in light of the evidence presented; if D&R was not in breach, was Trinity, as D&R's alter-ego, in breach? Only the trial court could answer that question, and the trial court erred when it said that it was prohibited from doing so. The trial court's decision left material questions of fact and law unanswered.

¶ 31    Even if we had not reversed the judgment on the jury's verdict, we would have had to reverse the trial court's judgment on Count IV, as the court's *ratio decidendi* was a *non-sequitur*. The trial court incorrectly determined that the jury verdict controlled the claims that he was to adjudicate. The jury never addressed the relationship between D&R and Trinity. Therefore, concluding that the actions of D&R relative to profit or sale were decided by the jury relative to whether Trinity was the alter-ego, and whether it was sold or realized a profit, was counterfactual and a *non-sequitur*. Since these issues were *not* decided by the jury, they could not control or support the court's dismissal with prejudice of Count IV of Jean Ann's amended complaint. The trial court's judgment of dismissal must be reversed, and a new trial held.

¶ 32                               III. CONCLUSION

¶ 33    For these reasons, the judgment of the Circuit Court of Du Page County is reversed in its entirety, and the case is remanded for new trials on all claims.

¶ 34    Reversed and remanded for new trials on all claims.